0204

Lillie Mae THOMAS, Respondent, v. JIM WALTER HOMES, INC., Appellant.

(317 S. E. (2d) 768)

Court of Appeals

Ray L. Derrick, of Funderburk & Derrick, of Columbia, for appellant.

Joe F. Anderson and Greg W. Anderson, both of Anderson, Anderson & Anderson, of Edgefield, for respondent.

Heard March 26, 1984.

Decided June 22, 1984.

GARDNER, Judge:

Respondent Lillie Mae Thomas (Thomas) sued appellant Jim Walter Homes, Inc., (Jim Walter) for breach of a contract to build a house. At trial, Thomas timely moved, without objection, to amend the complaint to conform to the facts proved by adding a cause of action for breach of implied warranty of habitability. The jury returned a verdict for Thomas in the amount of $7,500. The verdict, on motion for a new trial nisi, was reduced to $6,000. We affirm in part; reverse in part and remand for a new trial as to damages only.

The three issues presented on appeal are whether (1) Jim Walter is contractually responsible for the respondent's alleged septic tank problems, (2) the trial judge erred in adding the cause of action for breach of implied warranty and (3) there was sufficient evidence to support the verdict, as remitted, of $6,000.

These facts are uncontested: (1) The contract was for the construction of a house on a lot owned by Thomas; (2) at the time, the South Carolina Department of Health and Environmental Control (DHEC) required that septic tanks be installed by the owner prior to construction of a house by Jim Walter; (3) Thomas' lot sloped upward from the street and she installed a septic tank on the rear end of the lot; (4) Jim Walter selected the site on which the house was constructed; (5) when the house was completed by Jim Walter, it was discovered that the house was not high enough from the ground to provide enough gravitational pull to carry the sewage from the house to the septic tank; and (6) the floor plans which were a part of the contract provided that the house would be elevated 16 inches (2 cement blocks) from the ground.

## I.

We affirm the ruling of the trial judge that Jim Walter was contractually responsible for the septic tank problems. Thomas testified that the number of eight inch cement blocks used for pillars on the house ranged from five at the front of the house to one at the lowest point on the rear of the house. Jim Walter's witness, Nettles, testified that there were at least two blocks (sixteen inches) for all pillars on the house. No request to view the house was made by either party. The evidence is conflicting about the necessary elevation of the house from the ground to provide adequate gravitational pull for the sewage system.

The record discloses that the house was sitting too low and there was not enough drop from the floor of the house to the septic tank for the sewage to flow. Thomas testified that the health people told her the house was sixteen inches too low; this was in narrative testimony during which Thomas testified that Jim Walter selected a site for the erection of the house too far from the septic tank. The lot sloped upward and, consequently, the further the house was erected from the septic tank, the higher the house had to be erected in order to accommodate the necessary gravitational pull for the septic tank. The jury, from the testimony, could well have concluded that the "two block" elevation called for by the floor plan would have easily provided the necessary gravitational pull for the sewage system if the house had been constructed at this height and if Jim Walter had selected the best site for the location of the house.

We find no error in the trial judge's refusal to direct a verdict for Jim Walter or his failure to grant judgment n.o.v. The learned trial judge was controlled by the rule of law that the evidence on motions for directed verdict and judgment n.o.v. must be construed in a light most favorable to the party against whom the motion is directed; if there is any testimony tending to prove the allegations of the complaint, such motions must be refused. *Melton v. Williams*, 314 S. E. (2d) 612 (S. C. App. 1984). Furthermore, on appeal we can reverse a verdict of a jury only if there is no evidentiary support for the verdict. *Causey v. Blanton*, 314 S. E. (2d) 346 (S. C. App. 1984).

## II.

We affirm the trial judge's amending of the pleadings by adding a cause of action for breach of an implied warranty of habitability. Jim Walter made no objection to Thomas' motion at the time it was made. He may not raise this issue for the first time on appeal. *Cudd v. John Hancock Mut. Life Ins. Co.*, 310 S. E. (2d) 830 (S. C. App. 1983).

### III.

The respondent submitted no testimony about either the cost or inconvenience of the delay in moving into the house or the delay and inconvenience in moving out of the house should necessary repairs be made. There is no testimony about the cost of building a septic tank closer to the house. All of the testimony relating to the other damages such as cost of repair, etc., reflect clear proof of damages of only $2,000. The testimony is incomplete as to the damages suffered by the respondents.

We affirm the judgment as to liability but hold that the evidence of record is insufficient to support the verdict, as remitted, of $6,000. The case is remanded for a new trial as to damages. Accordingly, the judgment below is affirmed in part; reversed in part and remanded for a new trial as to damages.

Affirmed in part; reversed in part and remanded.

CURETON, J., concurs with result.

GOOLSBY, J., concurs with separate opinion.

GOOLSBY, Judge (concurring):

I do not believe the facts manifest a breach of contract; and, to that extent, I cannot join the majority's opinion; however, I concur in the result the majority reaches.

In order to establish a right of recovery for breach of contract, a plaintiff must prove by competent evidence the contract, the breach of the contract, and the damages proximately caused by the breach. *Baughman v. Southern Railway Company*, 127 S. C. 493, 121 S. E. 356 (1924). To prove a breach of the contract in this instance, Thomas was required to show that Jim Walters agreed to build the shell home to a particular height. Nowhere does the building contract signed by

Thomas prescribe a specific height for the house to be constructed. Thomas admitted as much at trial. *Viz:*

> Q. (By Mr. Derrick) In the suit ... you said that the plans and specifications called for the house to be erected at a height above the ground sufficient to allow sewage running from the house to have sufficient fall to run into a septic tank. Was all that in the contract that you signed? Did you read it in there?
> A. Wasn't any of it in there; said nothing about the fall whatever. Like you said yesterday, the regular level was two blocks. It's not there.

In fact, the contract merely states:

> Footing for concrete block foundation wall to be 8″ x 16″ poured 2500 psi concrete. Footings for interior piers to be 8″ x 16″ poured 2500 psi concrete. Foundation wall courses and piers to be 8″ x 8″ x 16″ cured masonry block, mortared and laid plumb and level. ...

Thomas interpreted the plans and specifications to require the house to be constructed upon two eight (8″) inch cement blocks. She asserted at trial that the house was built one block high in some places and as many as five blocks high in others. Yet, testimony clearly established that the house needed to be sixteen (16″) inches higher to accommodate her septic tank. One additional eight (8″) inch block would not have solved her problem.

Thus, even if we were to assume that the contract specified that the house was to be constructed upon two eight (8″) inch cement blocks, and nothing in the written building contract of record in this case shows that it was to be, such non-conformity could not be the proximate cause of Thomas' septic tank malfunctioning.

The building contract likewise fails to define the precise location upon Thomas' lot on which to build the house. It merely states, "The Seller agrees to build a house ... on the property of the Buyer, located at Rt. 1, Trenton, S. C." Thomas conceded at trial that she had not selected any particular spot for the house to be built upon.

Jim Walters, however, does not appeal the sufficiency of the evidence to support the breach of implied contract claim. It

does argue the point in its brief but no exception permits Jim Walters to make the argument. The exception involving the breach of implied warranty claim relates solely to the action of the trial judge in allowing the complaint to be amended to include the assertion of the claim. The exception reads as follows:

> 6. The Trial Judge erred in granting the Respondent's Motion to Amend the Complaint so as to include a cause of action for breach of implied warranty. This was error because such amendment substantially changed the Respondent's claim, took the Appellant by surprise and, being granted at the close of testimony, precluded the presentation of a defense thereto by the Appellant.

Without an exception as to the sufficiency of the evidence as to the breach of implied contract claim, we are bound by the finding of liability because of the "two issue rule." *See Gasque v. Heublein, Inc.*, 315 S. E. (2d) 556 (S. C. App. 1984). Where the jury returns a general verdict involving two or more issues, as in this case, and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal. *Anderson v. West*, 270 S. C. 184, 189, 241 S. E. (2d) 551 (1978).

I agree with the majority that Jim Walters did not preserve its position regarding the amendment because of its failure to object at the time the amendment was allowed. The following discussion appears in the transcript of record:

> MR. ANDERSON: ... [W]e'll be glad to move at this time to amend our pleadings to conform with the evidence ... and ... include breach of implied warranty. ...
>
> MR. DERRICK: One final word, Your Honor. Back to the contract for one final time, under General Information, it does not say that everything would be operable. It says, and I quote, "All necessary fittings and accessories to make bath and kitchen fixtures operable." Fittings and accessories, I don't think that can be interpreted to mean you're going to have a septic tank hooked up to when you show stubbed out to three feet outside of the house [*sic*].
>
> THE COURT: Motion to make the complaint conform to the proof so as to include implied warranty is granted. ... Anything further?
>
> MR. DERRICK: Nothing further, Your Honor.

I would affirm the judgment as to liability, but for different reasons.